UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Fred Hollander

     v.                       Civil No. 08-cv-99-JL
                                 Opinion No. 2008 DNH 129

Senator John McCain
and the Republican
National Committee


**O R D E R**

Fred Hollander, proceeding pro se, brings this action challenging Senator John McCain's eligibility to serve as President of the United States. Hollander claims that McCain, by virtue of his birth in the Panama Canal Zone--albeit to American parents--is not a "natural born Citizen" eligible to hold the office of President under Article II, § 1 of the Constitution.

Though McCain and his co-defendant, the Republican National Committee ("RNC"), vigorously dispute this claim, they argue that this court cannot decide it in any event due to a number of jurisdictional defects: lack of standing and ripeness, mootness, and nonjusticiability. The defendants also argue that Hollander has failed to state a claim for relief because (1) they are not state actors, so Hollander cannot maintain any constitutional claim against them and (2) in any event, any remedy for it would necessarily violate their own First Amendment rights.

This court held a hearing on the defendants' motion to dismiss this action on those grounds on July 24, 2008.  Based on the arguments presented there, as well as in the parties' briefing, the court rules that Hollander lacks standing to bring this action.  The court does not reach the rest of the parties' arguments, including, most notably, the question of McCain's constitutional eligibility to be President.

**I.  <u>Applicable Legal Standard</u>**

A court faced with a challenge to standing at the pleading stage, as here, must "accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party." <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975). Hollander's pro se complaint, furthermore, must be construed liberally, "held to less stringent standards than formal pleadings drafted by lawyers." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (internal quotation marks omitted).  Yet even these standards do not require the court to credit "[e]mpirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts" in the complaint.  <u>Sea Shore Corp. v. Sullivan</u>, 158 F.3d 51, 54 (1st Cir. 1998) (internal quotation marks omitted); <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997).

II.  **Background**

       McCain was born, in 1936, at the Coco Solo Naval Air

Station, a United States military installation in the Panama

Canal Zone.[1]  At the time, McCain's father--who, like McCain's

mother, was an American citizen--was stationed there on active

duty with the United States Navy.  McCain, by virtue of his

American parentage, is unquestionably an American citizen.  See

Act of May 24, 1934, Pub. L. No. 73-250, § 1, 48 Stat. 797

(amended 1952) ("Any child hereafter born out of the limits and

jurisdiction of the United States, whose father or mother or both

at the time of the birth of such child is a citizen of the United

States, is declared to be a citizen of the United States")[2]; see

also Act of Aug. 4, 1937, Pub. L. No. 75-243, 50 Stat. 558

(codified as amended at 8 U.S.C. § 1403(b)) (conferring

citizenship on children born in the Canal Zone to one American

parent on or after February 26, 1904, and born to one American

_____

       [1]Though Hollander makes this allegation in his complaint, in
his objection he states, "[s]ince the hospital at the Coco Solo
Naval Air Station did not even exist until 1941 . . . , it is
reasonable to assume that [McCain] was born in the city of Colón
in the Republic of Panama."  Hollander has also provided a copy
of McCain's birth certificate, which lists his place of birth as
Colón.  The defendants dispute this theory, but it is irrelevant
to the present motion in any event.

       [2]The law is the same today.  See 8 U.S.C. § 1401(c) (2005).

parent anywhere in Panama after that date so long as the parent was employed there by the United States at the child's birth).

Yet the Constitution provides that "No person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President."  U.S. Const., art. II, § 1, cl. 4 (emphasis added).  The phrase "natural born Citizen" is not defined in the Constitution, see Minor v. Happersett, 88 U.S. 162, 167 (1875), nor does it appear anywhere else in the document, see Charles Gordon, Who Can Be President of the United States:  An Unresolved Enigma, 28 Md. L. Rev. 1, 5 (1968).  The phrase has thus spawned a largely academic controversy over whether it excludes those citizens who acquired that status via birth to American parents abroad.  Compare, e.g., Jill A. Pryor, The Natural-Born Citizen Clause and Presidential Eligibility:  An Approach for Resolving Two Hundred Years of Uncertainty, 97 Yale L.J. 881, 899 (1988) (concluding that those citizens are eligible) with, e.g., Gabriel J. Chin, Why Senator John McCain Cannot Be President 17-18 (July 2008) (unpublished manuscript), available at http://www.law.arizona.edu/FacultyPubs/Documents/ Chin/ALS08-14.pdf (concluding they are not).[3]

---

[3]Though the weight of the commentary falls heavily on the side of eligibility, see, e.g., Sarah Helene Duggin & Mary Beth

The question has taken on a real-world dimension, however, during the occasional presidential candidacies of politicians born abroad:  Franklin D. Roosevelt, Jr., who was born to American parents in Canada, see Warren Freedman, Presidential Timber:  Foreign Born Children of American Parents, 35 Cornell L.Q. 357 n. 2 (1950); George Romney (father to McCain's one-time opponent in the recent Republican presidential primary, Mitt Romney), who was born to American parents in Mexico, see Gordon, supra, at 1; and, now, McCain, see, e.g., Chin, supra, at 3-4. In McCain's case, the question also takes on an additional layer of complication due to his birth in the Panama Canal Zone.

Those born "in the United States, and subject to the jurisdiction thereof," U.S. Const., amend. XIV, have been considered American citizens under American law in effect since the time of the founding, United States v. Wong Kim Ark, 169 U.S. 649, 674-75 (1898), and thus eligible for the presidency, see, e.g., Schneider v. Rusk, 377 U.S. 163, 165 (1964) (dicta).  So

---

Collins, "Natural Born" in the USA:  The Striking Unfairness and Dangerous Ambiguity of the Constitution's Presidential Qualifications Clause and Why We Need to Fix It, 85 B.U. L. Rev. 53, 82-83 (2005) (surveying authority), many of these commentators acknowledge that the question is not completely free from doubt, see, e.g., Lawrence Friedman, An Idea Whose Time Has Come--The Curious History, Uncertain Effect, and Need for Amendment of the "Natural Born Citizen" Requirement for the Presidency, 52 St. Louis U. L.J. 137, 143 (2007).

the defendants say that, apart from McCain's citizenship by
parentage, he can be President because "he was born within the
sovereign territory of the United States," namely, the Canal
Zone, over which they argue the United States was exercising the
powers of a sovereign at the time of McCain's birth, under the
Hay-Bunau-Varilla Convention.  <u>See</u> Convention between the United
States and the Republic of Panama for the Construction of a Ship
Canal to Connect the Waters of the Atlantic and Pacific Oceans,
U.S.-Pan., art. III, Nov. 18, 1903, 33 Stat. 2234, 2235.  The
Supreme Court, however, has made contradictory comments in dicta
on the status of the Canal Zone.  <u>Compare</u> <u>O'Connor v. United
States</u>, 479 U.S. 27, 28 (1986) (observing that the United States
exercised sovereignty over the Canal Zone under the Convention)
<u>with</u> <u>Vermilya-Brown Co. v. Connell</u>, 335 U.S. 377, 381 (1948)
(observing that the United States has no sovereignty there).

    Hollander claims, due to what he calls McCain's "unequivocal
ineligibil[ity]" for the Presidency, that the RNC "should not be
permitted to nominate him . . . .  This would lead to the
disenfranchisement of [Hollander] and 100 million additional
voters" in the general presidential election.  Hollander, in
fact, claims that he has already suffered disenfranchisement in
the 2008 New Hampshire Republican primary, because it resulted in

the allocation of delegates to the Republican National Convention on McCain's behalf, despite his alleged ineligibility.[4]

As a result, Hollander says, his vote in the New Hampshire primary, and those of others participating in primary elections in which McCain appeared on the ballot, "will count less than [the votes of] those who voted in other parties' primary elections," which led to the allocation of votes to a constitutionally eligible Presidential candidate.  Hollander adds that the defendants are responsible for this disenfranchisement because McCain ran in the New Hampshire primary "under false pretenses" to his eligibility for the Presidency, while the RNC "authorized" him to do so.  To remedy his claimed disenfranchisement in the New Hampshire Republican primary, and to prevent his further claimed disenfranchisement in the general election, Hollander requests:  (1) a declaratory judgment that McCain is ineligible for the Presidency, (2) an injunction requiring McCain to withdraw his candidacy, and (3) an injunction requiring the RNC to reallocate the delegates awarded to McCain as the result of the New Hampshire primary and others, and to nominate another candidate.

---

[4]McCain received about 37 percent of the vote in the primary, resulting in the allocation of seven delegates to him and five to other candidates.

III. **Analysis**

As previously mentioned, the defendants argue that Hollander lacks standing to maintain this lawsuit.  "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies'. . . .  As an incident to the elaboration of this bedrock requirement, [the Supreme] Court has always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit."  Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471 (1982).  So-called "Article III standing" has three requirements:  (1) the plaintiff has suffered "an injury in fact," (2) that injury bears a causal connection to the defendant's challenged conduct, and (3) a favorable judicial decision will likely provide the plaintiff with redress from that injury.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  The party bringing the claim--Hollander here--bears the burden to show his or her standing to bring it.  Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004).

Based on these principles, the Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government--claiming only harm to his and every citizen's interest in proper application of the

8

Constitution and laws, and seeking relief that no more directly
and tangibly benefits him than it does the public at large--does
not state an Article III case or controversy." Lujan, 504 U.S.
at 573-74. These holdings include Schlesinger v. Reservists
Committee to Stop the War, 418 U.S. 208 (1974), where the Court
ruled that a group of citizens lacked standing to litigate the
eligibility, under the Incompatibility Clause,[5] of members of
Congress to serve simultaneously in the military reserves.

Alleging injury "because Members of Congress holding a
Reserve position in the Executive Branch were said to be subject
to the possibility of undue influence by the Executive Branch, in
violation of the concept of the independence of Congress"
embodied in the Clause, the plaintiffs sought an injunction
against the service of congressmen in the reserves as well as "a
declaration that membership in the Reserves is an office under
the United States prohibited to Members of Congress by Art. I, §
6, cl. 2." Schlesinger, 418 U.S. at 211-12 (footnote omitted).
But the Court called it

---

[5]Together with the Ineligibility Clause, this provision
states, "No Senator or Representative shall, during the Time for
which he was elected, be appointed to any civil Office under the
Authority of the United States, which shall have been created, or
the Emoluments whereof shall have been increased during such
time; and no Person holding any Office under the United States,
shall be a Member of either House during his Continuance in
Office." U.S. Const., art. I, § 6, cl. 2.

> nothing more than a matter of speculation whether the
> claimed nonobservance of that Clause deprives citizens
> of the faithful discharge of the legislative duties of
> reservist members of Congress.  And that claimed
> nonobservance, standing alone, would adversely affect
> only the generalized interest of all citizens in
> constitutional governance, and that is an abstract
> injury.

Id. at 217 (footnote omitted).  The Court went on to hold "that standing to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share."  Id. at 229.

Schlesinger makes clear, then, that Hollander does not have standing based on the harm he would suffer should McCain be elected President despite his alleged lack of eligibility under Art. II, § 1, cl. 4.  That harm, "standing alone, would adversely affect only the generalized interest of all citizens in constitutional governance."  418 U.S. at 217; see also Ex parte Lévitt, 302 U.S. 633, 634 (1937) (ruling that citizen lacked standing to challenge appointment of Hugo Black to the Court under the Ineligibility Clause based on his membership in Congress when it enacted a new judicial pension plan).

Hollander, however, argues that the harm to him from McCain's candidacy transcends simply the right to be governed by a constitutionally qualified President; Hollander claims it also

10

impacts his right to vote, both in the New Hampshire Republican Primary and the general election.  This is a difficult theory to understand, but it appears to rest on the premise that McCain's mere status as a presidential candidate or party nominee somehow interferes with the electoral franchise of voters like Hollander who consider McCain ineligible for the office.  Presumably, those voters are empowered to address that concern on their own by voting for a different presidential candidate, whose eligibility is unimpeachable.  The presence of some allegedly ineligible candidate on the ballot would not seem to impair that right in the least, no matter how that candidate performs in the election.

To be sure, courts have held that a candidate or his political party has standing to challenge the inclusion of an allegedly ineligible rival on the ballot, on the theory that doing so hurts the candidate's or party's own chances of prevailing in the election.  See, e.g., Tex. Dem. Party v. Benkiser, 459 F.3d 582, 586-87 & n.4 (5th Cir. 2006); Schulz v. Williams, 44 F.3d 48, 53 (2d Cir. 1994); Fulani v. Hogsett, 917 F.2d 1028, 1030 (7th Cir. 1990).  But that notion of "competitive standing" has never been extended to voters challenging the eligibility of a particular candidate.  See Gottlieb v. Fed. Elec. Comm'n, 143 F.3d 618, 622 (D.C. Cir. 1998).

In <u>Gottlieb</u>, the court drew a distinction between voters'
claims over the allegedly illegal <u>exclusion</u> of their preferred
candidate and the allegedly illegal <u>inclusion</u> of a rival
candidate.  <u>Id.</u>  While the exclusion "directly imping[es] on the
voters' ability to support" their chosen candidate--after all,
they cannot vote for somebody who is not on the ballot--the mere
inclusion of a rival does "not impede the voters from supporting
the candidate of their choice" and thus does not cause the
legally cognizable harm necessary for standing.  <u>Id.</u> (citing
<u>Buckley v. Valeo</u>, 424 U.S. 1, 94 (1976)).  So voters have no
standing to complain about the participation of an ineligible
candidate in an election, even if it results in the siphoning of
votes away from an eligible candidate they prefer.  <u>See</u> <u>id.</u>  As
<u>Gottlieb</u> reasons, only the eligible candidate, or his or her
political party, can claim standing based on that injury.

In addition to <u>Gottlieb</u>, "[s]everal other Circuit Courts
have also concluded that a voter fails to present an injury-in-
fact when the alleged harm . . . is only derivative of a harm
experienced by a candidate."  <u>Crist v. Comm'n on Pres. Debates</u>,
262 F.3d 193, 195 (2d Cir. 2001) (per curiam).  One of those
courts was the First Circuit in <u>Becker v. Federal Election
Commission</u>, 230 F.3d 381 (1st Cir. 2000).  There, both
presidential candidate Ralph Nader and a group of voters

challenged the corporate sponsorship of presidential debates.
Id. at 383-84.  Nader alleged that, in light of "his principled
stand against accepting corporate contributions," he could not
participate in these debates, placing him at a competitive
disadvantage to his campaign rivals, who harbored no such qualms.
Id. at 386.  The court of appeals ruled that this conferred
standing on Nader, but not on the voters.  Id. at 389-90.

> In rejecting the voters' standing, the court reasoned:

> Regardless of Nader's injury, his supporters remain
> fully able to advocate for his candidacy and to cast
> their votes in his favor.  The only derivative harm
> Nader's supporters can possibly assert is that their
> preferred candidate now has less chance of being
> elected.  Such 'harm,' however, is hardly a restriction
> on voters' rights and by itself is not a legally
> cognizable injury sufficient for standing.

Id. at 390 (citations omitted).  That reasoning applies with
equal force here.  McCain's candidacy for the presidency,
whatever his eligibility, is "hardly a restriction on voters'
rights" because it in no way prevents them from voting for
somebody else.  In fact, Hollander alleges that he did just that
in the New Hampshire Republican primary.

That Hollander's chosen candidate lost despite McCain's
alleged ineligibility does not, as Hollander asserts, mean that
his vote "count[ed] less" than, say, those cast in the New
Hampshire Democratic primary, which presumably gave voters a

13

choice among constitutionally qualified candidates only.[6]  So far
as the complaint discloses, the New Hampshire Secretary of State
duly counted the votes in each party's primary and apportioned
the delegates to the candidates accordingly under New Hampshire
law.  See N.H. Rev. Stat. Ann. § 659:94.  The apportionment of a
majority of the Republican delegates to McCain, who won his
party's primary here, did not injure Hollander any more than the
constructive exclusion of Nader from the presidential debates
injured his supporters; in each case, the practice simply made it
less likely that the plaintiff's preferred candidate would
ultimately be elected, which, as the First Circuit held in
Becker, does not amount to a judicially cognizable injury.

     Hollander also argues that he "would again be
disenfranchised should he vote for McCain in the general election
and then McCain should be subsequently removed due to his lack of
eligibility."  Unlike Hollander's other "disenfranchisement"

_____

     [6]It is hard to say for sure, since there were some twenty-
one presidential candidates in the New Hampshire Democratic
primary, many of whom are hardly household names.  N.H. Sec'y of
State, Candidates for Upcoming Presidential Primary Election,
http://www.sos.nh.gov/presprim2008/candidatesfiled.htm (last
visited July 24, 2008).  There were the same number of
presidential candidates on the Republican side.  Id.  This
underscores the difficulty with Hollander's theory that the
simple presence of an ineligible candidate on a ballot
necessarily disenfranchises all voters who support eligible
candidates in that election.

theory, this one does not depend on the failure of his chosen
candidate <u>because of</u> McCain's alleged ineligibility, but on the
success of Hollander's chosen candidate--who is McCain in this
scenario--<u>despite</u> his alleged ineligibility.  On this theory,
however, Hollander's alleged "disenfranchisement" flows not from
the actions he has challenged here, <u>i.e.</u>, McCain's presidential
campaign or the RNC's likely selection of him as its nominee, but
from his subsequent removal from office at the hands of someone
else (presumably one of the co-equal branches of government),
resulting (presumably, yet again) in a President different from
the one Hollander helped to elect.

This theory presents a number of serious problems, not the
least of which are whether the removal of an elected official by
non-electoral means amounts to "disenfranchisement" of the voters
who put him there, <u>cf.</u> <u>Powell v. McCormack</u>, 395 U.S. 486, 547
(1969), and whether the claim is "contingent on events that may
not occur as anticipated or may not occur at all," <u>Lincoln House,
Inc. v. Dupre</u>, 903 F.2d 845, 847 (1st Cir. 1990), namely,
McCain's election to, then removal from, the office of
President.[7]  Putting those considerations aside, however, the

---

[7]There is also the question of whether "disenfranchisement"
resulting from a vote for an ineligible candidate is the sort of
"self-inflicted" harm caused by the voter, rather than any state
actor, which therefore does not amount to an infringement of the

theory does not establish Hollander's standing because it does not "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct," Allen v. Wright, 468 U.S. 737, 751 (1984), but to the conduct of those--whoever they might turn out to be--responsible for ultimately ousting McCain from office. Indeed, McCain and the RNC are trying to achieve the opposite.

Hollander's real complaint seems to be that, in the general election, he will face the Hobson's choice of having to vote for his party's nominee, who is allegedly ineligible, or against his party's nominee, though he is a registered Republican.  But a political party retains considerable, if not unlimited, discretion over the selection of its nominees, see 1 Tribe, supra, §§ 13-23--13-25, at 1118-1129, and these limitations have never been understood to incorporate the "right" of registered party members to a constitutionally eligible nominee.[8]  Moreover,

franchise right.  See 1 Lawrence H. Tribe, American Constitutional Law § 13-24, at 1122-23 (2d ed. 1988) (reasoning that, where voters disqualify themselves from voting in one party's primary under state law by voting in another's, it is the voters' own behavior, "rather than the operation of state law, that should be blamed for their inability to cast a ballot," discussing Rosario v. Rockefeller, 410 U.S. 752 (1973)).

[8]The Supreme Court has upheld state laws prohibiting certain candidates from appearing on the ballot--including those "ineligible for office, unwilling to serve, or [running as] another party's candidate"--against challenges founded on the associational rights of the party who wishes to nominate such a candidate.  Timmons v. Twin Cities Area New Party, 520 U.S. 351,

Hollander remains free to cast his vote for any candidate he considers eligible, including by writing in whichever Republican candidate he believes should be nominated instead of McCain, and to have that vote counted just as much as those cast for the party's official nominee, so his right to the franchise remains intact.  See Reynolds v. Sims, 377 U.S. 533, 555 (1964) (defining right as "to vote freely for the candidate of one's choice" without "debasement or dilution of the weight of a citizen's vote").  Difficult choices on Election Day do not translate into judicially cognizable injuries.

This is not to demean the sincerity of Hollander's challenge to McCain's eligibility for the presidency; as discussed supra Part II, that challenge has yet to be definitively settled, and, as a number of commentators have concluded, arguably cannot be without a constitutional amendment.  What is settled, however, is that an individual voter like Hollander lacks standing to raise

---

359 (1997) (footnote omitted); see also Socialist Workers Party of Ill. v. Ogilvie, 357 F. Supp. 109, 113 (N.D. Ill. 1972) (rejecting party's First Amendment challenge to exclusion from ballot of presidential candidate who did not meet constitutional age requirement).  But again, Hollander's claim is not a political party's challenge to the exclusion of its candidate from, or the inclusion of a rival candidate on, the ballot; it is a voter's challenge to the inclusion of an allegedly ineligible candidate on the ballot.  So this case raises no question as to the constitutionality of a state-law prohibition on ineligible candidates; Hollander's claim is not that McCain was or will be kept from the ballot, but that he should have been or should be.

17

that challenge in the federal courts.  See Dugan & Collins, supra, at 115 (recognizing debates over meaning of Art. II, § 1, cl. 4, but concluding that voters lack standing to raise that issue judicially).  Indeed, "[t]he purest reason to deny standing is that the plaintiff is not able to show an injury to the voter interest, however much the plaintiff may feel offended by the challenged practice."  13 Charles Alan Wright et al., Federal Practice & Procedure § 3531.4 (2d ed. 1984 & 2007 supp.) (footnote omitted).  Because Hollander can show no such injury, this court lacks jurisdiction over his attempt to resolve the question of McCain's eligibility under Art. II, § 1, cl. 4. Whatever the contours of that constitutional provision, Article III has been definitively read by the courts to confer no jurisdiction over this kind of action.

## IV.  **Conclusion**

For the foregoing reasons, the defendants' motion to dismiss is granted on the ground that Hollander lacks standing.  All other pending motions are denied as moot.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

Joseph N. Laplante
United States District Judge

Dated:  July 24, 2008

cc:  Fred Hollander, pro se
     Charles G. Douglas, III, Esq.
     Matthew D. McGill, Esq.
     Amir C. Tayrani, Esq.
     Seth R. Aframe, Esq.